SO ORDERED.

SIGNED this 24 day of January, 2006.



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BRADLEY JAMES POPPELREITER, | ) | Case No. 04-14600 |
| MARLA SUE POPPELREITER, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| COMMUNITY BANK OF THE MIDWEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 04-5316 |
| | ) | |
| BRADLEY JAMES POPPELREITER, | ) | |
| MARLA SUE POPPELREITER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Community Bank of the Midwest ("Bank") filed this adversary proceeding taking exception

1

to the debtors' discharging their debt.[1] This debt consisted of direct notes the debtors made to the Bank as individuals and their guaranty of the debts of an entity defined below as Pop's. In the pretrial order, the Bank abandoned its dischargeability causes of action. Instead, the parties have boiled this matter down to one essential issue – whether the Bank's security interest in the debtor's vehicles also secures the debtor's obligations under their guaranty of the debts of Pop's Wholesale and Vending, Inc. ("Pop's"). The parties submitted this case to the Court on stipulations contained in the final pretrial order, supplemental stipulations, agreed exhibits, and briefs.[2]

Jurisdiction

The Court has jurisdiction over this core proceeding because it pertains to the validity and extent of the Bank's lien.[3]

Facts

On January 19, 1998, the debtors signed a guaranty of Pop's debts to the Bank.[4] To secure the guaranty, debtors executed and delivered to the Bank a second mortgage on their homestead.[5]

On January 21, 2000, the debtors executed a note and security agreement (the "Car Loan") by which they refinanced their 1996 Mazda and received purchase money to acquire their 1997

---

[1] As originally filed, the Bank alleged 11 U.S.C. § 523(a)(2) and (a)(6) exceptions to discharge.

[2] Dkt. Nos. 24, 27, 29 and 30.

[3] 28 U.S.C. § 1334 and 28 U.S.C. § 157 (b)(2)(K).

[4] Exhibit C.

[5] The debtors' second mortgage is limited to the amount of $25,600 and expressly provides that it secures the guaranty of January 19, 1998. Exhibit B.

2

Ford.[6] They granted the Bank a security interest in both vehicles. The provisions of the security agreement include the following terms: "The security agreement secures this loan . . . *and any other debt I have with you now or later.*"[7]

On September 30, 2002, Pop's made and delivered a note to the Bank for $113,500 (the "Commercial Loan") which references as part of its security the debtors' guaranty of *September 30, 2002*.[8] The Pop's note does not reference the debtors' vehicles or the January 21, 2000 Car Loan security agreement.

The debtors have now paid the Car Loan in full, but the Bank contends that it is entitled to retain its security interest in the vehicles because the debtor's guaranty obligation of the Commercial Loan remains outstanding in the principal amount of $25,600.[9] The Bank argues that the vehicles continue to secure the guaranty as a result of the dragnet language contained in the Car Loan documents. The debtors respond that because the 1998 guaranty specifically references the January 19, 1998 mortgage, it is *only* secured by the mortgage.

At issue, then, is whether the dragnet language in the security agreement portion of the Car Loan extends security to the guaranty. To answer this question, the Court looks to the provisions

---

[6] Exhibit D.

[7] Exhibit D [Emphasis added.].

[8] Exhibit E. The Court notes that the Commercial Loan is a renewal of two prior loans and it appears that the debtors executed a new guaranty the same date of the Commercial Loan, September 30, 2002. The September 30, 2002 guaranty of the debtors has not been provided to the Court and is not part of the record. No reference is made in the Commercial Loan to the debtors' previous 1998 guaranty. These circumstances do not alter the conclusion the Court reaches today.

[9] Pursuant to the Supplemental Stipulations of the parties, the amount due as of August 16, 2004 is $28,152.99 with per diem interest of $4.90 accruing on the principal balance. *See* Dkt. 30.

3

of Article 9 of the Revised Uniform Commercial Code as adopted in Kansas, effective July 1, 2001.[10]

Analysis

The provisions of KAN. STAT. ANN. § 84-9-204(c) (2004 Supp.) state in part:

> (c) Future advances and other value. A security agreement may provide that collateral secures . . . future advances or other value, whether or not the advances or value are given pursuant to commitment.

As this Court held in *First Choice Credit Union v. Christy (In re Christy),*[11] this language is no longer freighted with the close-relatedness or sameness of kind and character of debt limitations that courts judicially imposed upon dragnet clauses, especially in consumer situations.[12] Instead, the courts examine the terms of the parties' agreement.

Here, the language of the January 21, 2000 security agreement clearly provides that whatever debt the debtors owed to the Bank would be secured by the vehicles.[13] The debtors cite no case law or learned authority that would support limiting the embrace of this unambiguous and broad language to anything less than its express terms. As this Court noted in *Christy*, the Official UCC Comment authored by the National Conference of Commissioners on Uniform State Laws and The American Law Institute forcefully and directly addresses the effect of this new section on previous case law:

> Under subsection (c) collateral may secure future as well as past or present advances

---

[10] KAN. STAT. ANN. § 84-9-101 *et seq* (2004 Supp.) and Revisor's Note, § 84-9-701.

[11] *First Choice Credit Union v. Christy (In re Christy)*, Adv. Pro. No. 04-5176, Case No. 04-10987 (Memorandum Opinion at p.11-13, October 27, 2004 (Nugent, C.J.)).

[12] *See Emporia State Bank v. Mounkes*, 214 Kan. 178, 519 P.2d 618 (1974).

[13] Exhibit D.

4

if the security agreement so provides. . . . Indeed, the parties are free to agree that a security interest secures any obligation whatsoever. Determining the obligations secured by collateral is solely a matter of construing the parties' agreement under applicable law. This Article rejects the holdings of cases decided under former Article 9 that applied other tests, such as whether a future advance or other subsequently incurred obligation was of the same or a similar type or class as earlier advances and obligations secured by the collateral.[14]

In the 2004 edition of his treatise on Secured Transactions, Professor Barkley Clark notes that prior to the enactment of the revision, "courts have bent over backwards" to protect consumers from the effects of future advance clauses, but that the Official UCC Comment suggests that, under the revised Code, if the language of the security agreement is broad enough, the clause should be upheld so long as no other statute expressly prohibits it.[15] Debtors here point to no other Kansas statute that would prohibit the operation of the dragnet clause in this case.

Nor is the Court persuaded that by specifically referencing only the 1998 mortgage in the guaranty, the debtors limited the guaranty's security to the mortgage. As stated by the Kansas Supreme Court in *First National Bank & Trust Co. v. Lygrisse*, Kansas law is clear that for a real estate mortgage to secure an obligation, the instrument evidencing the obligation must reference the mortgage.[16] And, prior to the enactment of revised Article 9, if real or personal property security was not referenced in the debt instrument, the rule in *Lygrisse* held that a subsequent debt was secured by antecedent security only if "the subsequent debt is of the same kind or character as, or part of the same transaction or series of transactions with, that originally secured by the mortgage."[17]

---

[14] 3 UNIFORM LAWS ANN. § 9-204, Official UCC Comment, ¶ 5.

[15] Barkley Clark, 2 THE LAW OF SECURED TRANSACTIONS, ¶ 10.01[4][f] (Rev. ed. 2004).

[16] 231 Kan. 595, 599, 647 P.2d 1268 (1982).

[17] *Id.* at Syl. ¶ 1.

5

With the enactment of revised Article 9, the analogy to this rule in regard to security interests in personal property no longer applies.

Here the debtors obligated themselves to repay the debts of Pop's and, in the Car Loan, agreed that their vehicles would secure that (and any other) obligation. Without the protection of the now-discarded close-relatedness doctrine, the debtors' vehicles fall prey to the dragnet clause contained in the Car Loan security agreement and remain encumbered until such time as the Bank chooses to release them or the guaranty obligation is paid to the extent of the principal amount of $25,600 plus accruing interest.

Judgment should be entered for the Bank and against the debtors declaring that the Bank's security interest in the 1997 Ford and 1996 Mazda operates to secure the debtors' repayment of their guaranty obligations in the principal amount of $25,600 plus interest until paid. A Judgment on Decision will issue this day.

# # #